Good morning, Mrs. Sanders. Would you like to reserve any time for reply? Yes. Five minutes, please, Your Honor. Certainly. You may begin. May it please the Court. Appellants today seek reversal of the bankruptcy court order denying discharge. The appellants believe that the bankruptcy court erred when it denied the discharge pursuant to sections 727A2 and A4 because the appellants do not have the requisite knowledge, fraudulent intent for the denial of the discharge. In this matter, the appellants had filed the petition for bankruptcy using the attorneys that they had in the prior case in 2018. At the very first 341 meeting of creditors, Mr. Sanders disclosed to the trustee that there was an error in the schedule and that a property, the Yates property, was omitted from the schedules. The appellants believe, and the case law suggests, in the case of Inouye Waddell and Inouye Brown, which is cited in the appellant's reply brief on page 6, that when a debtor who fully discloses property transactions at the very first meeting of creditors, fraudulent intent to conceal property is not evident. In this matter, as indicated, Mr. Sanders disclosed that property was omitted from the schedules. The debtors did not harbor the intent to conceal the property, and the debtors promptly disclosed all information to the creditors. In reading all of the transcripts and the arguments and such, clearly the matter was disclosed at the 341. One sense is that in these cases it's often a chain. One thing doesn't usually become this big of a problem. For the Yates property, it seemed like one of the concerns was that there was a sense that this property had no value. There's a tone and tenor that, well, we forgot. It's not in great working order. It's just really more of a burden than anything. There's no value there. And then it turns out the trustee sells it for $220,000. So that kind of, looking back then, that kind of puts a different look to it. Can you address that? Yes, Your Honor. I don't believe that Mr. Sanders ever indicated that there was no value to the property. I believe what was indicated when the trustee asked for a valuation of the property, what was indicated was that the property isn't listed on Zillow to find a value of the property. We disclosed what Mr. Sanders said. Generally, the courts take a very dim view of Zillow values. Understood. But the property itself had no value. We disclosed the property tax records that valued the property and what that was, and that was listed in the 2018 case. So there was never any indication that the property didn't have value. Mr. Sanders disclosed all of the efforts that had went into fixing up the property, all of the work that had gone to rent that property. What was disclosed was that this property had been vacant for years. It did not have any tenants. And there was no income being derived from that rental property because it had been vacant since before the pandemic in 2020. Mr. Sanders was not very clear about how long before, but it was several years before that. So there was never any indication or intent or suggestion by myself or Mr. Sanders that the property didn't have any value. So the appellants, again, as I indicated, at the 341, Mr. Sanders immediately disclosed that this property was not left on there. That first creditor of meetings started late and it did not conclude. And so we came back at the next creditor of meetings, and that's when the rest of the questions were about the bank accounts, the tax returns, and that was immediately disclosed as well. So there wasn't the sense, as appellant notes in his brief, that the trustee had to drag this information out. At the first opportunity that we had, this information was disclosed. And then as required under, I believe it's the Sears case and Combs case, the remedy is to prepare the amendments for the schedules, which was done through counsel. We disclosed all of that information. Appellant counsel in his brief cites that the TAC LLC was not disclosed, and we do not believe, appellants do not believe that that was a material omission. The TAC LLC, as indicated, was not in existence. It had opened, and I don't recall the exact year, but it was mentioned in the 2018 case for the intent of transferring the business to that entity. That did not happen. It was transferred to the Pinole Packaging and Postage LLC, and TAC LLC was never used. It had no assets. It had no other operations. So we don't believe that the TAC LLC was material, but we did disclose that in the amendments when they were filed as requested by the trustee. Appellants also believe that in the bankruptcy court's ruling, the bankruptcy court, I think, went through and tried to establish the facts, but I believe that, excuse me, appellants believe that there was a conflating of the issues and the intent. The appellate court tended to treat the debtors as one individual as opposed to two separate individuals in determining what the intent was and what the actions were. And as I cited in my reply brief and in the opening brief, the actions of spouses have to be treated individually, and you cannot, the case law does not allow the from one spouse to the other spouse. With respect to, excuse me, in the trial, as noted in the transcript, the bankruptcy court noted on the transcript for May 22nd, 2025, on page 139, lines 15 through Mr. Sanders and myself, Mrs. Sanders, and requested briefing on that issue, which the appellants did do. But when the court issued its ruling on August 13th, 2025, the court made no distinction in terms of the difference of liabilities from the actions from Mr. Sanders and Mr. Sanders. Instead, the court made a general observation about the actions in general without distinguishing what actions Mr. Sanders made, what Mrs. Sanders made. And in that case, inferred intent from Mr. Sanders to Mrs. Sanders, and we believe that that was error in this case. So is it the error that, would the court have not been an error if they determined, the court determined that Mr. Sanders was not entitled to a discharge but your separate estate was? So I believe it's two things. I think, I believe that the evidence does not show that Mr. Sanders had the fraudulent intent itself because he did disclose all of the information. There was an error. It was corrected. And that is what the law requires. But in answer to your second part of your questions, yes, I do believe that the court needed to make a distinction between the actions of myself and Mr. Sanders, and that was not done. And that is error. You cannot infer. The case law is clear that intent has to be actual. It cannot be constructive, and it cannot be inferred. The actions of one spouse do not infer to the actions of the other spouse. And the intent, as a specific state of mind, cannot be inferred from one party to another. But could it be inferred from the fact that you knew about the Yates property? It was disclosed in your previous bankruptcy, and you signed schedules that didn't have the Yates property on it. And as I've indicated in the prior testimony, and it was indicated in the brief, it was clearly a mistake. It was clearly, I guess you would say, careless or sloppy that I didn't carefully review that to see that that information was in there. But there was not an intent to hide or conceal that property. It was listed in the prior case. Wouldn't the fact that it wasn't listed in your second bankruptcy, that that's a fact to be considered, whether or not you had intent? It's a factor to be considered. But when the court looks at all of the other factors and all of the actions, as I said, the immediate disclosure of that, no other, we went through several creditor meetings, and there was no other property that was concealed. It was disclosed at the earliest opportunity at the first 341. And then, again, the error in the account records, which were disclosed prior to the filing of the petition through the attorney, there was no intent for myself or Mr. Sanders to conceal, hinder, or conceal the property. But that brings us to the complicating factor of recklessness in these situations. Recklessness alone isn't enough, but it doesn't have to be a specific intent to defraud. Recklessness with something else can occasionally get you there. And the court was clear that it was the Yates property, the TAC that you mentioned, but also then the refunds and the undisclosed bank accounts that those refunds had gone, at least one had gone into by the time of year 341. The problem, and you're beyond your time, I'm taking you over a little bit, is that when you look at all of that, understand that there's an argument that you could go the other way, and we may not even quibble if the court did go the other way, but it found enough here. Why is that error? So I think that the error, and, again, I want to reserve a little bit of time, but into conflating the issues. So the tax returns went into Mr. Sanders' direct account, his personal account, to which Ms. Sanders, myself, I don't have access to. So to infer that I have knowledge of that or information about that or I tried to conceal that, I think that is error and that it infers his actions onto my intent. And with that, I do want to refer you. Thank you very much. Good morning, and may it please the Court. The Sanders' filed this appeal because they disagree with the conclusions of the Bankruptcy Court law. But Judge Lafferty's factual findings in this matter are subject to clear error on review. And for that reason, and I think that the appellants are aware of this to some extent, they primarily rely on distortions of what that ruling was, sort of straw man arguments. I'm going to first give a summary of the issues on appeal and then get into some of their arguments. The first issue on this appeal is whether the court abused its discretion in denying the Sanders' a discharge under section 727A2A. The court did not err. There is no dispute that there were very many omissions in this case from the schedules and statements that Mr. and Mrs. Sanders filed. Those schedules and statements were signed under penalty of perjury. Are you arguing specific fraudulent intent, actual, or is this a recklessness case? I think there's specific intent, Your Honor. As to both spouses? Yes, Your Honor. Okay. And I will note that all of the facts that Judge Lafferty found indicative of fraud applied to both Mr. and Mrs. Sanders in this case. So that's one of the, I think, straw man argument, the argument that there's some imputation going on here. Clearly the court considered the issue because the court asked for a briefing on the issue of intent for both spouses. And then the court went on to make findings of fact that only applied to both spouses. There really wasn't a reliance on conduct of Mr. Sanders to find fraud under either A4 or A2B. And that included the use of the, or the receipt of the tax refunds, as Mrs. Sanders just mentioned? Yes. I understand that under A2B, you know, there was a concealment. They knew that they were entitled to tax refunds. They received those tax refunds, which were property of the state, post petition. They signed their schedules and statements and didn't disclose those refunds. There's a specific question on schedules and statements that solicits whether or not there are tax refunds entitled to debtors. And they answered no, and they signed those documents under penalty of  They waited to disclose those omissions until prompted by the Chapter 7 trustee. And then after that, they waited multiple months before filing amendments. The First Amendment was filed October 3rd, and then the Second Amendment was filed October 16th. The First Amendment only had one of the tax returns. The Second Amendment had the 2022 tax return, which was the $15,000. And it also had the TAC account, which was used to deposit the returns. There are very many facts in this case that, you know, left Judge Lafferty to say, and I quote, it is difficult to conclude anything other than fraudulent intent. And all those facts apply to both Mr. and Mrs. Sanders in this case. Now, going back to A4, there's an argument about materiality. All of the omissions that were made, the Yates property and the tax refunds obviously were valuable assets. And with respect to the other omissions, those are material because they would have led to the discovery of valuable assets or even just generally the discovery of omissions. That makes them material. There is knowledge, there's no dispute that both Mr. and Mrs. Sanders had a valuable asset. But in the end, again, the court found fraudulent intent, looking at the type of omissions, the interplay on the omissions, the delay in amendments, the multiple amendments. And I think what the court found was inconsistent and implausible explanations. And I think that's probably a good time to get into one of the arguments that the appellant makes, which is that they disclosed the Yates property at the very first 341 meeting. And it's true that they did disclose it at the very first 341, but I think it's very telling to go back and review that transcript because it gets to the middle of the 341 and the trustee asks if there are any errors or omissions. And Mr. Sanders then states, and this is the supplemental excerpts record 12, listening earlier today, I think I might have omitted a property, a real property. He then answers, it's just, it's really an abandoned building, but it's in  And the trustee asks, you own it? And Mr. Sanders responds, yeah, with my father. And then later he says, well, he just used it for work. Later he responds, it's dilapidated. Then the trustee retorts, it's my understanding it is in a good neighborhood. Mr. Sanders responds, nah, I mean, I haven't seen it in 10 years. So I think that there is clearly from the facts in the record and what Judge Lafferty saw is that they were trying to downplay this asset. And even at the outset, Mr. Sanders said it was listening to other 341s that caused him to disclose the property. And what I gleaned from that and what I think Judge Lafferty probably understood is that he saw how diligent the trustee was being and he realized that he probably should disclose the asset that he had not disclosed, especially because it had been disclosed in a prior bankruptcy. And that is, in fact, what the Chapter 7 trustee was doing. She already did know about the property because she had read the schedules and statements in the prior filing. And she addressed that with the Sanders' former counsel, Mr. Gonzalez, at this 341 meeting. With respect to the... Is there anything in the record that shows that the trustee let counsel know that she'd looked at the Chapter 13 schedules before Mr. Sanders volunteered the information? Yes, but you have to make an inference, I think, by reading the transcript. The way she talks about it, she starts to talk to Mr. Gonzalez about, well, are there any other omissions? I think she says something akin to, do you know how I found out about this? And then he says, oh, I don't know. And she says, yeah, because they listed it in the prior bankruptcy. So that's at the first 341 meeting. But did that happen before or after the debtor said, I have property in Chicago? It definitely happened after, but I don't think that there's anything in the record to indicate that the trustee was surprised by the information. I was wondering if it was information provided by the debtor voluntarily, or did it come as a result of the trustee's work? Well, I would argue that it came as a result of listening to the other 341s that were going on that day. And that was what he stated at the 341, that he listened and then decided to disclose that property. And the appellant also argues that she had no access to the bank account that held one of the tax refunds. I don't think there's support for that in the record. I know that the tax refunds were deposited into two separate accounts, and I think one of them was the personal account, one of them was the TAC LLC account. And was the tax return in which it was saying, hey, we should get some money back, was that a joint tax return? Yes, it was, and it was signed by them. So both parties signed it, both parties expected a tax return. Yes, Your Honor. And there simply was no evidence presented at any juncture in this trial below that there was no knowledge. There was no time at which Mrs. Sanders testified that something was going on that she had no idea about. And, you know, because of that, that's probably why Judge Lafferty didn't simply didn't need to bifurcate his analysis here with fraudulent intent because he only looked to facts that generally applied to them both. The knowledge, the lack of disclosure in schedules and statements, delay in amendments, the interplay between the omissions, and just a second here. They also make an argument that the court imputed fraudulent intent from the numerosity, I think, of the omissions alone. And I think they primarily rely on the Coombs case for this. But they really – Coombs is taken out of context. In that case, there was a 401K that would have been exempt, and the court was remarking that, you know, there were no facts to indicate that they had any reason to try to hide that asset. And that's very different here because the assets here were very valuable. We have a property that sold for almost $230,000. We have a $7,000-plus tax refund and then a separate $15,000-plus tax refund. And the specific omissions, when Judge Lafferty references the interplay, he's talking about the fact that the concealment of the bank accounts furthered the concealment of the tax refunds and furthered the concealment of the Yates property because the Yates property expenses were paid out of the TAC LLC bank account. And, you know, it's that interplay that, you know, really is demonstrative of fraud. And unless Your Honors have any more questions for me, I would ask – I would rest and ask that the decision below be affirmed. Any questions? Thank you very much. Thank you, Your Honors. All right, Ms. Sanders, it looks like you have about 3 minutes and 45 seconds. Thank you. So I did want to respond to counsel's argument or statements in response to Justice Corbett's question about whether or not the disclosure at the first 341 was voluntary. And in response to Justice Corbett's question, whether Mr. Sanders disclosed prior to the trustee engaging in a conversation with the appellate's attorney, it was prior to that. Mr. Sanders disclosed first and then the trustee engaged in a dialogue with the attorney that she had been aware of the disclosure. So it was voluntary. Mr. Sanders disclosed that there was an admission prior to that and that is in the transcript for that first 341 meeting. Turning back to the tax returns, there were two tax returns in question. The 2022 tax refund, as was indicated in the transcript for the trial, was filed prior to April 15, 2023. For whatever reason, the IRS did not process that return until, I believe, we received the refund in June of 2022. But it was a joint return, correct? It was a joint return. So couldn't Judge Lafferty have inferred that you knew about the tax return because you signed? He could infer that you knew about that there would be a tax refund because you personally signed the tax return. He could have inferred that, but I also had testified that I had not been aware that we did not receive the tax refund. Generally, our tax refunds are received shortly after the state refund was received and the state refund had been received and it went directly into Mr. Sanders' own personal account, 3180. I did not have access to that account and I did not know that the 2022 tax refund had not been received. And so the issue is that Justice Lafferty would be inferring that knowledge and conflating the issues from what my personal knowledge was and my intent and conflating that with Mr. Sanders. So unless the court has any additional questions, I have no other.  I don't have any additional questions, so thank you very much. Thank you. All right. Case will be submitted. Thank you very much for your arguments. We'll try to get this out as well as early as possible. Madam Clerk, with that, I believe we're adjourned. We can go off record. Thank you. All rise. This session is now adjourned.
judges: Spraker, Gan, Corbit